IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 26, 2018

## WILLIAM FRANKLIN ROBINETTE v. STATE OF TENNESSSE

**Appeal from the Criminal Court for Greene County**
**No. 15CR057      Alex E. Pearson, Judge, by interchange**

---

### No. E2017-02105-CCA-R3-PC

---

The petitioner, William Franklin Robinette, appeals the denial of his petition for post-conviction relief, which petition challenged his 2012 Greene County Criminal Court jury convictions of solicitation to commit first degree murder, claiming that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Robert L. Foster, Greeneville, Tennessee, for the appellant, William Franklin Robinette.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; and Barry P. Staubus, District Attorney General Pro Tem,[1] for the appellee, State of Tennessee.

### OPINION

A Greene County Criminal Court jury convicted the petitioner of the solicitation of the first degree premeditated murder of Rick Bowser, his co-defendant in an unrelated criminal case, and Mr. Bowser's girlfriend, Ina Roberts. In the petitioner's first direct appeal, this court affirmed the convictions but remanded the case for resentencing. *See State v. William Franklin Robinette*, No. E2012-00640-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Sept. 30, 2013), *perm. app. denied* (Tenn. Feb. 12, 2014) (*Robinette I*). Upon remand, the trial court imposed consecutive 20-year

---

[1] By agreement of the parties and the court, District Attorney Staubus was designated to represent the State.

sentences for the convictions of solicitation to commit first degree premeditated murder; this court affirmed the sentences on direct appeal following remand. *See State v. William Franklin Robinette*, No. E2015-00154-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Jan. 12, 2016) (*Robinette II*).

The evidence adduced at the petitioner's trial established that the petitioner solicited Allen Correll and Amanda Turner to kill Mr. Bowser and Ms. Roberts by blowing up the trailer home where the victims lived. The petitioner initially approached Mr. Correll in May 2010 outside the Greene County Courthouse "about 'making [the petitioner's] charge partner disappear.'" *Robinette I*, slip op. at 5. "Mr. Correll and Ms. Turner, who had overheard part of the conversation, reported the matter to the police." *Robinette II*, slip op. at 2. During a controlled telephone call with the petitioner that was arranged and monitored by the police, "Mr. Correll arranged to meet the defendant at a Wendy's restaurant." *Id.* The police monitored the conversation via recording equipment fixed to Mr. Correll's person. During their conversation, the petitioner instructed Mr. Correll to "use propane tanks to blow up the house" trailer where Mr. Bowser and Ms. Roberts lived. *Robinette I*, slip op. at 2. "At the end of the conversation, the men made plans to meet at the [petitioner's] residence on the following day." *Robinette II*, slip op. at 2. At that meeting, the petitioner again asked Mr. Correll and Ms. Turner to blow up the house trailer where Mr. Bowser and Ms. Roberts lived. The petitioner told Mr. Correll and Ms. Turner that he would provide propane tanks and gave specific instructions on how to commit the crime:

> [I]f you put those propane tanks under the house trailer and turn them on ever so slightly you would have to run hose from where the propane tanks were, . . . about two hundred feet, away from the house. Then you would use another propane tank to charge that water hose line, and then once that line was charged it would act as a fuse. It would light one end of the hose that you were actively safe and the propane would burn up the hose and eventually reach to where the propane tanks were.

*Robinette I*, slip op. at 3. Additionally, the petitioner "told Mr. Correll and Ms. Turner to feed the victims' dogs 'to keep them quiet while positioning the propane tanks,'" "suggested that they 'steal the water hose so that it could not be traced to them,'" and "'gave them $20 cash.'" *Robinette II*, slip op. at 2 (quoting *Robinette I*, slip op. at 3).

On February 6, 2015, while the direct appeal following resentencing was pending, the petitioner filed a pro se petition for post-conviction relief alleging errors in the composition of the jury and ineffective assistance of counsel related to the

composition of the jury. The petitioner also claimed that his counsel had an actual conflict of interest because she had accepted employment with the district attorney general's office before the conclusion of the direct appeal in his case.

Following the appointment of counsel, the petitioner asked the post-conviction court to hold the post-conviction case in abeyance pending the disposition of the petitioner's direct appeal following resentencing. The case was then continued by agreed order. The petitioner filed an amended petition for post-conviction relief on February 16, 2016, alleging that his counsel performed deficiently by failing to challenge a juror for cause, by failing to object to the mention of the petitioner's prior criminal history during the trial, and by failing to challenge the composition of the jury venire and that, without these failures, the result of the proceeding would have been different.

At the August 25, 2017 evidentiary hearing, the petitioner indicated his intent to address only four issues: counsel's failure to challenge a juror for cause, counsel's failure to challenge the composition of the jury venire, counsel's failure to object to certain testimony, and the existence of an actual conflict of interest.

The petitioner testified only that he did not tell trial counsel that she should not challenge potential juror Tony Jones for cause. He refused to waive his attorney client privilege with regard to any other issue.

Trial counsel testified that, prior to the petitioner's trial, she moved the trial court for a change of venue, which was denied, but that she did not challenge the composition of the jury venire. She said that she was aware that the venire contained a number of individuals either employed as law enforcement personnel or related to those individuals employed as law enforcement personnel. Counsel acknowledged that the petitioner told her that potential juror Tony Jones had worked for the sheriff's department but said that she did not know that Mr. Jones was familiar with the petitioner's extensive criminal history. She said that the petitioner "explained to [her] very briefly that Mr. Jones had been employed by the sheriff's department at some point in time" but was not so employed at the time of trial. Counsel recalled that the petitioner believed that "there was a disagreement between Mr. Jones and his former employer such that he may hold law enforcement a little more accountable than perhaps other jurors." She said that she wanted to strike Mr. Jones but that the petitioner "asked that we keep him because he said he was familiar with him, his family and also the dealings of law enforcement." Given the petitioner's insistence that Mr. Jones might be helpful to his case, counsel chose not to challenge Mr. Jones for cause, explaining, "If I feel like there is someone that's going to help [the petitioner], obviously I want him on that panel."

Counsel acknowledged that during Detective John Huffine's direct examination testimony, the detective testified that he was familiar with the petitioner because the petitioner "'had his share of run-ins with us and he had been the subject of a theft investigation just prior to this, not too long before that.'" She said that although she did not lodge a contemporaneous objection to the testimony, she had moved the trial court prior to trial to exclude any testimony regarding the petitioner's criminal history, "and Judge Dugger ruled on that allowing it to an extent." The order, which was exhibited to her testimony, permitted the State to "'introduce evidence of the [petitioner's] pending charge in Greene Count Criminal Court Case No. 10CR117, to show the [petitioner's] motive to conduct the offense alleged.'" She added that because the officer referred to "run-ins" with the petitioner and "didn't allege any prior crimes or bad acts," she did not believe an objection was warranted. She explained, "[S]ometimes objecting brings the jury's attention to something more often than it would to let something slide, especially if the Court has already addressed it. The wors[t] thing I could do in front of a jury is make it seem like a bigger deal than it actually is."

Counsel said that she became employed by the district attorney's office while the application for permission to appeal to the supreme court was still pending in the petitioner's first direct appeal. She said that, "[a]ccording to the [Administrative Office of the Courts]," her representation of the petitioner "had ended" and "was just pending."

During cross-examination by the State, trial counsel testified that she began representing the petitioner in a separate theft case in 2010 and that the first trial in that case ended in a mistrial after the jury could not return a verdict. Following a retrial, the petitioner was convicted of a lesser included offense. She recalled that it was "during the pendency of" the retrial for the theft case that the petitioner "incurred the solicitation to commit first degree murder" charge. She said that she was familiar with the petitioner's extensive criminal history and that, in her opinion, the petitioner "understood the system." Counsel reiterated that she did not object to Detective Huffine's testimony about the petitioner's "run-ins" with the sheriff's department because she did not believe the testimony necessarily indicated prior bad acts and because she did not want to draw unnecessary attention to what she believed to be relatively innocuous testimony.

Counsel testified that the State's case against the petitioner was particularly strong because the petitioner had been captured on audio and video recordings planning the murders. She said that she "filed every motion that [she] could possibly think of . . . to try to exclude that video." Counsel agreed that the recordings were damning to the petitioner's case. Counsel recalled that the petitioner elected not to testify because of his extensive criminal history, which included several convictions for crimes of dishonesty.

-4-

Counsel testified that, during jury selection, the petitioner indicated that he knew Mr. Jones and that "they were both familiar with one another." She said that, although she did not "remember [the] exact conversation," the petitioner told her that Mr. Jones knew "some of the officers involved in this and he understands their integrity or their desire to perhaps have a personal vendetta against" the petitioner. She said that, "for that reason, [the petitioner] thought [Mr. Jones] would be a good choice on our jury." Counsel identified her "jury selection chart," which showed that she had "made an X beside [Mr. Jones] immediately," indicating that she "did not want him on [the] jury." She said that she changed her mind following a consultation with the petitioner. Counsel also recalled that, during voir dire, Mr. Jones acknowledged that he knew the petitioner but stated that his familiarity with the petitioner would not interfere with his ability to remain impartial.

Regarding her employment with the district attorney's office, counsel testified that she accepted a position in the Hawkins County District Attorney General's Office while the petitioner's application for permission to appeal to the supreme court was pending. She said that she did not participate in any negotiations, conversations, or interviews regarding employment with any member of the Greene County District Attorney General's Office during the time she represented the petitioner. She said that her decision to accept a position in the district attorney's office did not impact her representation of the petitioner in any way. Counsel testified that her first day of employment was January 1, 2014, and that, by that point, all substantial work on the petitioner's case was complete.

At the conclusion of the hearing, the post-conviction court took the case under advisement. In the written order denying relief, the post-conviction court specifically accredited trial counsel's testimony that she chose not to challenge Mr. Jones because the petitioner asked her not to do so. The court found that the petitioner had failed to establish that a biased juror had actually been seated on the jury, noting that the trial transcript indicated that all of the jurors eventually selected "affirmed that they would be fair to both sides" and "that they would follow the trial judge's instructions." The court concluded that counsel's decision not to offer a contemporaneous objection to Detective Huffine's testimony that he had had previous "run-ins" with the petitioner "was perfectly reasonable under the circumstances." Finally, the court found that the petitioner had failed to present any evidence to suggest that counsel's obtaining a position in the district attorney's office resulted in an actual conflict of interest.

In this timely appeal, the petitioner claims entitlement to post-conviction relief on the basis of counsel's failure to challenge Mr. Jones for cause, to challenge the composition of the jury venire, and to lodge a contemporaneous objection to Detective Huffine's testimony.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record fully supports the denial of post-conviction relief in this case. Trial counsel's accredited testimony established that she chose not to challenge Mr. Jones only after the petitioner insisted that Mr. Jones might prove favorable to his case. The petitioner cannot now be heard to complain that counsel erred when counsel's decision was based entirely on information provided to counsel by the petitioner himself. Moreover, the petitioner presented no proof to suggest that "the jury who heard the case was not fair and impartial," and, in consequence, he is not entitled to relief. *State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993) (citing *State v. Thompson*, 768 S.W.2d 239, 246 (Tenn. 1989)). Similarly, the petitioner failed to present any evidence at all to support his claim that counsel should have challenged the composition of the jury venire. Finally, trial counsel's accredited testimony established that she chose not to object to Detective Huffine's testimony because she did not want to draw unnecessary attention to testimony she believed was not that big of a deal. We agree with the post-conviction court's assessment that counsel's decision was reasonable under the circumstances. More importantly, however, given the overwhelming proof of the petitioner's guilt, nothing suggests that, had counsel objected to the detective's testimony, the result of the proceeding would have been different.

Accordingly, we affirm the judgment of the post-conviction court.


_____
JAMES CURWOOD WITT, JR., JUDGE